UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| PAUL WARREN, )<br>)<br>PLAINTIFF )<br>)<br>v. )<br>)<br>UNITED PARCEL SERVICE, INC., )<br>)<br>DEFENDANT ) | CIVIL NO. 06-84-P-H |

POST-TRIAL RULINGS

Paul Warren sued United Parcel Service, Inc. ("UPS") under federal and state law, claiming that UPS unlawfully discriminated against him in employment on the basis of disability by denying him a driving position at its Rockland facility in 2004, and thereafter. After a three day trial on solely the Maine Human Rights Act ("MHRA") claim, the jury found for Warren and awarded him back pay of $74,155.99. Claims for prejudgment interest, reinstatement, front pay and other equitable relief remain for me to decide as judge.

1. ***Defendant's Motion for Judgment as a Matter of Law.*** UPS's motion is **DENIED**. There was abundant evidence from which the jury could find that Warren had a disability within the meaning of the Maine Human Rights Act.

2. ***Back Pay.*** At trial I reserved judgment on whether determination of back pay was for the judge or the jury and asked the jury to determine it. I stated

that if I concluded that the issue was for the judge, then the jury's verdict would be only advisory. The parties have not requested that I receive additional evidence. I now conclude that I need not determine whether the issue is for judge or jury, because even if it is for the judge to determine, I accept the jury's advisory verdict.

Under Maine law, the plaintiff has the burden to prove his damages, but need not prove them with absolute precision. Merrill Trust Co. v. Maine, 417 A.2d 435, 440-41 (Me. 1980) ("the most intelligible and probable estimate which the nature of the case will permit"; "judgmental approximation"). At trial, Warren testified about his work hours, his overtime, the fact that he generally obtained more overtime than the next most senior person (Warren is the most senior employee at the Rockland facility), and his own estimate of what he lost ($66,000 to $72,000) by being removed from his driving position. Trial Tr. March 27, 2007 at pp. 216, 221, 227 (Docket Item 89); Trial Tr. March 28, 2007 at pp. 272, 274 (Docket Item 90). The parties also introduced by stipulation Exhibits P-12 and P-13. Those exhibits showed what everyone in the Rockland facility earned, with and without overtime. It showed what the most highly compensated person earned, and what Warren earned in his nondriving job, for all the years in question. The Union's secretary treasurer (formerly a UPS employee) also testified. He stated that drivers with the most seniority are offered overtime first, Trial Tr. March 28, 2007 at pp. 316-17, and that Warren has the most seniority in

Rockland. Id. at p. 317. In his closing argument, Warren's lawyer invited the jury to calculate the total pay, including overtime, of the most highly compensated person at Rockland, to subtract the amounts that Warren earned in his less favorable position, and to award the difference to Warren. Trial Tr. Mar. 29, 2007 at pp. 594-95 (Docket Item 91). He told the jury that the amount was $74,155.99 and the jury awarded that amount. Id. at p. 595; Jury Verdict (Docket Item 79). (By my mathematics, the amount is actually $77,434.51, but UPS has no basis to complain about the lower award.)

UPS argues that the award is speculative and excessive, because it is likely that on the Whitefield route that Warren wants to drive, he would not return to the facility in time to get all the overtime that the most highly compensated received. UPS suggests that I award Warren the difference between his pay and what the average driver earnings were. That number certainly would be speculative. In fact, the evidence supports the jury's award, and it is not excessive. As the most senior driver at Rockland, Warren made a rational case for awarding him the pay and overtime that the most highly compensated driver received. If Warren could not have earned all that overtime for logistical reasons associated with the Whitefield route, UPS should have shown what the actual driver on the Whitefield route earned, and what overtime a more senior driver like Warren could have earned. UPS's failure to do so does not make the jury's verdict excessive or speculative. If it was the jury's role to determine back pay, I would

not overturn its award. If the jury's number is only advisory, I accept it as my own.

**3.** *Reinstatement.* The jury found that UPS illegally discriminated against Warren in violation of the Maine Human Rights Act, 5 M.R.S.A. § 4551, et seq., which prohibits employers from discriminating against a qualified individual with a disability because of the disability. UPS did so by requiring that Warren have DOT certification to drive the Whitefield route, a route that uses a vehicle with a Gross Vehicle Weight Rating (GVWR) of 10,000 pounds or less, for which no DOT certification is legally required. Warren cannot obtain DOT certification to drive vehicles with a GVWR of 10,0001 pounds or more because he has a medical history of epilepsy. 49 C.F.R. § 391.41(b)(8). UPS was unable to show that it could not waive the DOT certification as a reasonable accommodation that would allow Warren to drive the Whitefield route. UPS also failed to show that an individualized assessment of Warren provided a factual basis to believe to a reasonable probability that allowing him to drive the Whitefield route would endanger his or others' safety. The jury verdict demonstrates that.

Under Maine law, it is for me as the judge to determine whether, in addition to back pay, to order that Warren be reinstated to the Whitefield route driving position. See 14 M.S.R.A. § 4613(2)(B)(2); Higgins v. Maine. C.R. Co., 471 A.2d 288, 292 (Me. 1984) (remanding case to Superior Court to determine whether to order reinstatement); Rozanski v. A-P-A Transport, Inc., 512 A.2d 335,

342 (Me. 1986) ("[T]he paramount objective of the remedy is to make whole the victim of unlawful employment discrimination.  Choice of remedy to accomplish that goal is vested in the sound discretion of the Superior Court." (citations omitted)); <u>Maine Human Rights Comm'n v. City of Auburn</u>, 408 A.2d 1253, 1261 (Me. 1979) ("An action arising under the Human Rights Act is equitable in nature, and any relief thereunder is granted only through the exercise of the sound discretion of a judge.").  UPS has not contended that reinstatement is either impracticable or impossible.  Instead, UPS argues that I should not order Warren's reinstatement solely because of its safety concerns based upon his epilepsy.

I conclude that because UPS illegally discriminated against Warren based upon his disability, he is entitled to be restored to his job unless and until UPS has legal reasons to take him off the job.  Maine regulates safety concerns through its driving laws and its traffic and safety laws.[1]  The federal government

---

[1] The state of Maine has adopted rules to implement federal regulations regarding the operation of commercial vehicles.  Like the federal regulations, these do not apply to vehicles with a gross vehicle weight rating less than ten thousand (10,000) pounds.  <u>See</u> 29-250-006 Me. Code R. § 2(c).

The rules that do apply to the question whether Warren can operate a vehicle with a gross vehicle weight rating under 10,000 pounds are those developed by the Medical Advisory Board to the Secretary of State which enable the Secretary of State to determine a person's physical, emotional and mental competence to operate a motor vehicle in the state of Maine.  <u>See</u> 29-250-003 Me. Code R.  These standards govern the reporting of conditions, including cardiovascular disorders and seizure disorders.  The state of Maine does not have a blanket rule prohibiting individuals with disorders such as Warren's from driving.  Rather, Maine has established procedures requiring individuals to report the existence of certain medical conditions that may affect a person's ability to operate a motor vehicle.  The Secretary of State then requests from
*(continued next page)*

does the same for matters in its jurisdiction through DOT regulations.[2] None of those laws prevents Warren from driving the UPS vehicle in question on the Whitefield route, and it is not for me as a federal judge to come up with a special set of conditions. Apart from its discriminatory DOT certification requirement, UPS has not argued that Warren fails some independent set of safety standards that UPS applies to all drivers. I will not give UPS permission to apply special procedures to Warren alone. The relief I will order does not find that Warren is safe to drive or not safe to drive; instead, the order I will issue is devoted to remedying UPS's disability discrimination that violated state law. Maine's safety regulations are not affected by my order, and I am not ruling on whether UPS can

_____

these individuals a further medical report from a physician or other treatment personnel that specifies the diagnosis and any prescribed medications these individuals are taking. If the condition is a seizure disorder, the Secretary of State may also request the date of the last seizure. Upon receipt of this information the Secretary of State may approve a person's competence to drive, with or without restrictions, or determine that the person is not competent to drive. According to the Functional Ability Profile created to assist the Secretary of State in determining whether an individual with a seizure disorder is competent to drive, an individual who has had "[a]ny episodic alteration of consciousness including a single seizure episode" is not permitted to drive for six months. 29-250-003 Me. Code R. (Functional Ability Profiles at 16 n.2). An individual with a seizure disorder who is on medication may drive after he or she is seizure free for at least three months. The Secretary of State conducts an internal review of driving competency of such an individual every two years.

[2] The United States Department of Transportation Federal Motor Carrier Safety Administration regulates the operation of commercial motor vehicles defined as vehicles with a "gross vehicle weight rating or combination weight rating, or gross vehicle weight or gross combination weight, of 4,536 kg (10,001 pounds) or more, whichever is greater" 49 C.F.R. § 390.5. Commercial vehicles with a gross vehicle weight rating less than ten thousand and one (10,001) pounds are exempt from the Federal Motor Carrier Safety Regulations. Therefore, regulations precluding individuals from operating a commercial motor vehicle due to cardiovascular or seizure disorders do not apply to the question whether Warren can drive a vehicle with a gross vehicle weight rating under 10,001 pounds. See 49 C.F.R. § 391.41(b)(2)(4) (cardio vascular disease); 49 C.F.R. *(continued next page)*

devise a set of nondiscriminatory safety requirements. To that end, I will order that under the current provisions of the Maine Human Rights Act, UPS not apply its DOT certification requirement to a Maine route that, because of the weight of the vehicle used, does not require DOT certification under federal law, when applying the DOT certification requirement operates to exclude Warren on account of his disability. As I understand it, Warren's current union seniority means that without the DOT card requirement, he will have the right to drive that route. But my order is based upon current law and current facts. I am not going to try to write an order that adjusts to changes in facts, and I cannot write an order that accommodates future changes in the law.

  **4.**   ***Front Pay Until Reinstatement.*** Warren is entitled to front pay from the date of the jury award until his reinstatement. Rather than arbitrarily project a date for his reinstatement, I will allow the parties to tell me when Warren will return to work and to stipulate a dollar figure accordingly.

  **5.**   ***Interest.*** Warren requests prejudgment interest on the back pay award from the date he first filed his complaint with the Maine Human Rights Commission. The Maine statute allows prejudgment interest at 3% above the one-year Treasury bill rate from the last full week of the calendar year immediately prior to the year in which a notice of claim is served. 14 M.R.S.A.

---

§ 391.41(b)(2)(8) (epilepsy).

7

§ 1602-B.  The Maine Human Rights Act does not require a claimant to serve a notice of claim, but Warren argues that his filing of a sworn charge with the Maine Human Rights Commission (which it then served on UPS) should suffice.  UPS does not challenge the notice and service argument.  Rather UPS requests that prejudgment interest be waived or partially waived.  The parties agree that the decision to award prejudgment interest is discretionary.

I conclude that Warren is entitled to prejudgment interest under 14 M.S.R.A. § 1602-B; however, I order that the interest be partially waived due to the nature of the back pay award in this case.  At the time Warren served his notice of claim, he had been excluded from his job for about a month.  By the date of the jury verdict, the time had lengthened by more than two years and three months.  Compensatory damages are just that: compensatory, an effort to restore a plaintiff to where he would have been.  Without the discrimination, Warren would have earned his pay week by week or month by month, not in one lump sum on the date UPS received his notice of claim.  To award prejudgment interest from December 2004, therefore, would be punitive; without the discrimination, Warren could not have earned interest on amounts that he had not yet received.[3]

---

[3] In cases involving higher stakes, such matters are sometimes taken care of by having an economist discount back to present value at a fixed date all later payments, then calculate the interest award start from that fixed date, based on that discounted lump sum.

UPS has made a calculation accordingly ($3,991.35) in its Memorandum in Response to Plaintiff's Motion for Equitable Relief (Docket Item 88). Warren responds by saying that with compounding the amount would be $7,006.00. Pl.'s Reply to Def.'s Opp'n to Pl.'s Mot. for Equitable Relief (Docket Item 92). Compounding is appropriate. Once that the parties agree on the mathematics, I will make the award.

**6.** ***Protocol.*** Warren asks me to order UPS to create and abide by a written protocol for treatment of other employees who cannot obtain a DOT card but are disabled under Maine law, "detailing the steps that UPS will take to conduct an individualized assessment of the request of any employee asserting that s/he is disabled but is able to perform the essential functions of any job driving for UPS who otherwise would be prohibited from driving for UPS by virtue of UPS's policy requiring that all drivers have a DOT card." Pl.'s Mot. for Equitable Relief (Docket Item 85) at 5-6. I decline to do so. This lawsuit was tried over one state's statute. UPS operates in scores of jurisdictions. Considering solely Maine's statute, I cannot conclude that UPS was so recalcitrant that I should take such micromanagement measures. Indeed, Maine's Law Court interpreted the law in 2006, <u>Whitney v. Wal-Mart Stores, Inc.</u>, 895 A.2d 309 (Me. 2006), defining disability in a way that was a surprise to many and that made Warren's case

easier under Maine law than it would have been under federal law[4]; efforts are afoot to change the law[5]; I have no evidence in the record how many Maine routes UPS has like Whitefield, where it cannot automatically require a DOT card from a disabled driver; and there is no evidence how many drivers with disabilities there are in the Maine population who are likely to apply for such a position. I conclude that it is sufficient to grant the injunctive relief that results in Warren's reinstatement. I expect that as a result of this successful lawsuit, the jury award, and the attorney fees likely to come, UPS will take the necessary steps to avoid additional such claims, given the possibility of punitive damage awards in the future if it should fail to take remedial action.

Warren's lawyer shall consult with UPS's lawyer and prepare a form of judgment that reflects all that I have said in this ruling, as well as the jury verdict, and file it by July 2, 2007. If the parties are unable to agree on the judgment's form (obviously they preserve all their rights to appeal the jury verdict and adverse rulings that I have made), then Warren shall file his version with explanation by July 2, 2007, and UPS shall file its version with explanation by July 9, 2007. Warren may file a reply by July 13, 2007.

---

[4] In Whitney, Maine's Law Court concluded that the Maine Human Rights Act definition of "physical or mental disability" found in 5 M.R.S.A. §4553 (7-A) does not require a showing of a substantial limitation on a major life activity as does the analogous definition in the Americans with Disabilities Act, 42 U.S.C. § 12102(2)(A). 895 A.2d at 316.

**SO ORDERED.**

**DATED THIS 15TH DAY OF JUNE, 2007**

/S/D. BROCK HORNBY
**D. BROCK HORNBY
UNITED STATES DISTRICT JUDGE**

---

[5] See L.D. 1027 (S.P. 344) "An Act to Clarify the Definition of "Physical or Mental Disability" in the Maine Human Rights Act". Currently this bill is making its way through Maine's legislative process. An amended bill has been passed to be engrossed by both the House and the Senate.

11